SAFWAY STEEL SCAFFOLDS CO. OF GEORGIA, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

No. 77–1150.

United States Court of Appeals, Fifth Circuit.

March 9, 1979.

Harold E. Abrams, James A. Talerico, Atlanta, Ga., for plaintiff-appellant.

John W. Stokes, U. S. Atty., Sherman Darnell Johnson, Asst. U. S. Atty., Atlanta, Ga., Scott P. Crampton, Asst. Atty. Gen., Myron C. Baum, Acting Asst. Atty. Gen., Gilbert E. Andrews, Act. Chief, App. Sec., Carolyn R. Just, Ann Belanger Durney, James A. Riedy, Attys., Tax Div., U. S. Dept. of Justice, Washington, D. C., for defendant-appellee.

Before BROWN, Chief Judge, and TUTTLE and THORNBERRY, Circuit Judges.

THORNBERRY, Circuit Judge:

This is a tax refund suit. The question presented is how much of $21,600 paid by the taxpayer, Safway Steel Scaffolds Company of Georgia, to Charles and Richard Werner is deductible under 26 U.S.C. § 162(a)(3)[1] as rent. The Commissioner disallowed $9,720 of the claimed deduction and the district court sustained the government's position. The taxpayer, claiming that the entire amount is deductible, brings this appeal. For the reasons stated, we affirm.

Charles and Richard Werner are the sole stockholders of the taxpayer. In 1947, the brothers purchased four parcels of land in downtown Atlanta for $9,500 and assembled a single commercially useable parcel. On January 1, 1948, they leased the property to the plaintiff.[2] The lease was for twenty years and was to expire on December 31, 1967. Among other things, the lease provided: (1) that the taxpayer was to pay

---

1. 26 U.S.C. § 162(a)(3) states:

    (a) In general.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

    . . . . .

    (3) rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.

2. At the time of the lease, the taxpayer had a third owner, Richard V. Werner. Richard V. was the father of the Werner brothers and is now deceased.

an annual rent of $2,400 in monthly installments of $200; (2) that the taxpayer was to pay all taxes and utility charges; and (3) that the taxpayer could erect improvements on the vacant lot, but on expiration of the lease all attached improvements would become the property of the lessors (Werner brothers). The lease contained no option for renewal.

In January 1948, the Board of Directors of the plaintiff selected an architect to design a building for the taxpayer. On April 3, 1948, construction of the building began and the taxpayer moved into the new structure on December 3, 1948. The building had 18,433 square feet and the total cost of the building was $128,025. The district court found, and we will not disturb his finding here, that the structure had a useful life of approximately thirty-four years.[3]

At the expiration of the 1948 lease, the land and improvements reverted to the Werner brothers. However, the taxpayer and its owners-lessors entered into a new lease. This lease provided for a three year rental term and a net rental of $1,800 per month ($21,600 yearly). The parties have stipulated that this amount is a fair rental amount for the improvements and the ground rent. The taxpayer contends that the entire amount is deductible as rent while the government contends that the amount of rent allocable to the improvements is not deductible under Section 162(a)(3).[4]

■ It is ordinarily inappropriate to inquire into the reasonableness of the rent paid, however, this case presents an exception to the general rule. That exception is

the case of a close relationship between the lessor and the lessee, 4A J. Mertens, The Law of Federal Income Taxation § 25.110, or if the contract arises "between persons having an interest on both sides of a transaction." *Brown Printing Co. v. Commissioner*, 255 F.2d 436, 438 (5 Cir. 1958). In case of a close relationship between the lessor and the lessee the inquiry becomes, "If, viewing the circumstances in which the lease is made, it is such a lease as reasonable [persons] dealing at arm's length would make, then it is valid and binding . . . for tax purposes." *Id.* at 440.

The taxpayer argues that the court should look only to the reasonableness of the stated rental amount under the 1968 rent to determine the deductibility of the rent. The district court, however, concluded that it should examine all of the circumstances of the case and view the entire history between the taxpayer and the Werner brothers as a series of transactions to determine the tax consequences.

■ We agree that the district court correctly identified the test and justifiedly inquired into the reasonableness of all the transactions made between Safway and the Werner brothers. The district court concluded that the ground rental of $2,400 per year was not unreasonable,[5] but that parties dealing at arm's length would not have allowed an improvement with a thirty-four year useful life to revert at the end of a twenty year lease period without some economic benefit being given for the improvement such as a renewal option.[6] Therefore, the district court concluded that the payment attributable to the value of the im-

---

3. Taxpayer wanted to depreciate the structure over a twenty year period, but in 1959 entered into an agreement with the Commissioner to depreciate the building over a thirty-four year span.

4. The district court found that the value of the land plus the improvements was $200,000 in 1968, with $110,000 allocated to the land and $90,000 allocated to the improvements. Since the value of the improvements is 45% of the total value, the Commissioner disallowed 45% of the $21,600 claimed as a rental deduction [21,600 × .45 = $9,720].

5. The government invites us to hold that the amount allocated for ground rent under the 1948 lease was also unreasonable. The government's position rests on the proposition that only the purchase price and not the foreseeable appreciated value of the land may be used in calculating a fair return. We need not reach this point.

6. Or as suggested by the government, a concomitant reduction in rent attributable to the taxpayer for a period of the reasonable life of the improvements could be given.

provements was really in the nature of a non-deductible dividend made to the Werner brothers and not a deductible rent expense.[7]

We have examined the record developed in this case and the opinion of the district court. We have concluded that the district court properly applied the facts and made correct determinations of law. It is our opinion that the district court should be affirmed.

AFFIRMED.

7. The taxpayer also argues that the government is estopped from asserting the nondeductibility of the rent because the government audited the taxpayer's returns in 1959 and made no objection about the reasonableness of the rent. We think the cases conclusively demonstrate that no estoppel arises from these facts. See Union Equity Cooperative Exchange v. C.I.R., 481 F.2d 812, 817 (10 Cir. 1973). We also note that the taxpayer's argument rests on the implication that the Commissioner approved its rental deduction during the audit. We think another plausible inference is that the question simply never arose. A different question might arise were the Commissioner to affirmatively mislead the taxpayer as to a mistake of fact. (The government is never estopped as to a matter of law, Automobile Club v. Commissioner, 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746 (1957).)

